# Staunton

HANDY HALL v. COMMONWEALTH OF VIRGINIA.

September 10, 1941.

Record No. 2447.

Present, All the Justices.

The opinion states the case.

*A. H. Light,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Walter E. Rogers, Special Assistant,* for the Commonwealth.

Holt, J., delivered the opinion of the court.

About seven o'clock in the evening of December 22, 1940, on a Pittsylvania county highway, Handy Hall, colored, in circumstances presently to be stated, shot and killed Ennis E. Davis, also a member of his race. He was indicted for murder, was convicted of voluntary manslaughter, and has been sentenced to five years' confinement in the penitentiary.

After Davis was shot, Hall drove to a nearby merchant and told him what had happened. He was advised to

give himself up and, acting upon this advice, set out for the home of W. H. Bailey, a special policeman of Pittsylvania county. He met Mr. Bailey on the road, recognized his car, turned to follow him, and did follow him to the scene of the killing. He there told the officer that he had shot Davis and was sorry for it, but that he had to do it to protect himself from Davis, who was attempting to cut him with a knife, and that Davis was under the influence of whiskey, was cursing him and trying to get into his car to cut him when shot.

Bailey said that there were many tracks around Davis' feet but none around the upper part of his body. He found a knife in Davis' trouser pocket; the knife was shut, and his topcoat was buttoned up below and over the pocket. He found also on him a pint bottle about three-fourths full of whiskey.

Oscar Hall, an eyewitness, testified on behalf of the Commonwealth. That testimony, in narrative form, reads:

"I am the brother of Handy Hall's wife. I do not live with Handy Hall. Ennis Davis and several other men were at Handy Hall's at supper time. We ate supper but Ennis Davis had eaten supper and waited until we ate our supper. After supper we all looked at some hound puppies which belonged to Handy Hall and Ennis Davis wanted Handy Hall to give him one of the puppies, which Handy did. Then Ennis Davis wanted Handy to drive us in his car to Ennis Davis' home to carry the puppy which Handy Hall did. After remaining at Davis' home a short while somebody suggested that we all go over to Jennings Hall's (colored) as Ennis Davis was single and was going with one of Jennings Hall's girls and Handy Hall agreed to take us over there and we all got in Handy's car. Handy Hall driving, Ennis Davis and Sam Payne were on the front seat with him and I (Oscar Hall) (*Oscar Hall*) and Raymond Hall were on the back seat. We passed on up the road towards Level Run going towards the private road that turns out

of the public road to the right and goes to Jennings Hall's. Handy Hall said he would have to go to Level Run and get a little gasoline, if he didn't, he would not have enough to go to Jennings Hall's and then go back home and then go to his work at Long Island the next morning. Handy Hall is a section-hand, working on the Virginian Railroad out from Long Island. Ennis Davis commenced to curse and argue and demanded that they stop the car and let him out which Handy Hall did. Ennis Davis then went around to the left-hand door and continued to curse Handy Hall and threatened to cut him with a knife which Davis had open in his hand. He pulled the door open and Handy Hall shut it and they did this several times, and Ennis Davis struck the door several times, trying to strike Hall. During this argument and scuffle, the glass was broken, and a part of it fell down inside the door. Handy Hall locked the door on the inside, Ennis Davis went around the front of the car and tried to get in the right-hand front door, still cursing Handy Hall and threatening to cut him with a knife which Ennis Davis had in his hand. Ennis Davis was partly drunk. All of this time Handy Hall was trying to reason with Ennis Davis, telling him to hush cursing, put up his knife, get in the car and they would go to Level Run and get some gasoline and take him to Jennings Hall's. Ennis Davis said he did not want to go to Level Run and that he was not going, he wanted to go to Jennings Hall's and he was going, and he continued to curse Handy Hall and tried to get in the automobile on the right-hand side of the car, and tried several times to strike Handy Hall with the knife, and Ennis Davis got the right-hand front door of the car open and had his foot on the running board and was getting in the car and said he was going to cut Handy Hall's head off and Handy Hall reached in the box in the front of his car on the dashboard and pulled out a pistol and fired and Ennis Davis stepped back off of the running board of the car and turned around several times and made a few

steps and fell on the side of the road. This was about 7 o'clock P. M. I (Oscar Hall) got out of the car quickly and went back to Handy Hall's home and told his wife and while I was there telling her Handy Hall came, then we went back and saw that Ennis Davis was dead and we got in the car and Handy Hall drove the car and we went to Long Island and told Mr. Peak, who runs a store there, what had taken place and he told us to go find Mr. Bailey, the officer, and for Handy Hall to give up and we got some gasoline, from Mr. Peak and started to Mr. Bailey's house and we met him in the road coming to the scene of the killing and we recognized him by the spotlight on his car and he didn't stop. We turned around and went back to the scene of the killing and Mr. Bailey was there and Handy Hall gave himself up to Officer Bailey. I did not put his knife in his pocket, not did I button his overcoat.''

Raymond Hall, a son of Handy Hall, also a witness for the Commonwealth, testified to substantially the same state of facts, as did Handy Hall, testifying on his own behalf. He said that Davis was threatening to kill him and that he shot him with reluctance and to save himself. Conditions under which this was done are sustained by all the evidence in the record. Indeed, no matter of moment is in dispute. Nor is there any doubt about the fact that an unopened knife was found in the pocket of the dead man. How this came about we do not know.

█ It is true that one is not bound by a statement of his witness but he does vouch for his credibility. No lawyer sensible of the obligations of his office could ask the court to believe a witness whom he knew could not be believed.

In the instant case, we are dealing not merely with the statements made by one witness but by statements made by every witness who testified for the Commonwealth.

Handy Hall had worked as a section hand for the Virginian Railway for fourteen years, and so we may assume that he was industrious and had given satisfaction to his employer. He and Davis had been friends for years. No motive for his conduct had been shown, other than that suggested by the record, and that motive was to protect himself from death or from serious bodily harm.

The fact that an unopened pocket knife was found in the dead man's trousers pocket warrants a presumption to the effect that it had been there for some time unopened; in short, it warrants a presumption to the effect that Davis had not used it in an attack on Hall. On the other hand, we hesitate to believe that Hall would kill his lifelong friend without cause or motive.

Moreover, as was said by Judge Burks in *Mansfield* v. *Commonwealth,* 146 Va. 279, 135 S. E. 700, "There is no room for presumption where there is positive affirmative evidence on the subject."

"Presumptions are indulged to supply the place of facts; they are never allowed against ascertained and established facts. When these appear, presumptions disappear." Moore on Facts, section 545.

Two eyewitnesses were called by and testified for the Commonwealth. They are in agreement as much as witnesses are ever in agreement where they have not conspired to tell the same tale; and they are supported by the testimony of the defendant himself.

This evidence, if it is to be believed, makes out a plain case of killing in self-defense. It is not inherently improbable; it is positive and affirmative, and it comes from witnesses for whom the Commonwealth has vouched. Indeed, it is all of the evidence on that subject. It follows that the judgment of the court below should be reversed and this prosecution dismissed. It is so ordered.

*Reversed.*